# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| DOROTHY DIANNE ROGERS KELLY, MELISSA SAWYER, AND BOBBY DALE KELLY, INDIVIDUALLY AND ON BEHALF OF THE DECEASED BOBBY LAVELLE KELLY, AND DOROTHY DIANNE ROGERS KELLY AS THE PERSONAL REPRESENTATIVE ON BEHALF OF THE ESTATE OF BOBBY LAVELLE KELLY<br><br>Plaintiffs,<br><br>v.<br><br>SYNGENTA CROP PROTECTION LLC, CHEVRON U.S.A., INC., LOUISIANA STATE UNIVERSITY AND AGRICULTURAL AND MECHANICAL COLLEGE AND LOUISIANA STATE UNIVERSITY CENTER FOR AGRICULTURAL SCIENCES AND RURAL DEVELOPMENT A/K/A LSU AGRICULTURAL CENTER THROUGH THE BOARD OF SUPERVISORS OF LOUISIANA STATE UNIVERSITY AND AGRICULTURAL AND MECHANICAL COLLEGE<br><br>Defendants. | Case No. _____<br><br>(Formerly Case No. C-82988 in the 18th Judicial District Court, Parish of Iberville, Louisiana) |

## NOTICE OF REMOVAL

Defendants Syngenta Crop Protection LLC ("Syngenta") and Chevron U.S.A. Inc. ("Chevron"), pursuant to 28 U.S.C. §§ 1332, 1441, and 1446, hereby remove the above-captioned action from the 18th Judicial District Court for the Parish of Iberville, Louisiana, case number C-82988 to the United States District Court for the Middle District of Louisiana. In support of removal, Syngenta provides this "short and plain statement of the grounds for removal." 28 U.S.C. § 1446(a).

**NATURE OF REMOVED ACTION**

1. On January 26, 2024, Plaintiffs Dorothy Dianne Rogers Kelly, Melissa Sawyer, and Bobby Dale Kelly, individually and on behalf of the deceased Bobby Lavelle Kelly, and Dorothy Dianne Rogers Kelly as personal representative of the estate of Bobby Lavelle Kelly (collectively, "Plaintiffs") filed this action, *Kelly v. Syngenta Crop Protection, LLC et al.*, in the 18th Judicial District Court for the Parish of Iberville, Louisiana, case number C-82988, alleging claims based upon alleged exposure to products containing paraquat and Plaintiff Bobby Lavelle Kelly's subsequent diagnosis with Parkinson's disease.[1]

2. Plaintiffs assert a total of fifteen causes of action against Defendants Syngenta, Chevron, the Louisiana State University and Agricultural and Mechanical College ("LSU"), and the Louisiana State University Center for Agricultural Sciences and Rural Development ("LSU AgCenter"; together with LSU, the "LSU Defendants"), with both LSU Defendants purportedly named through the Board of Supervisors of Louisiana State University and Agricultural and Mechanical College ("LSU Board"). LSU and LSU AgCenter, however, are incapable of being sued under Louisiana law. Both entities are "under the supervision and management" of the LSU Board, La. R.S. § 17:3215(8), and only that "board as a body corporate" may "be sued," La. R.S. § 17:3351(A)(1). *See, e.g.*, *Davis v. La. State Univ. & A&M College*, 2019 WL 179580, at *4 n.37 (M.D. La. Jan. 11, 2019) (dismissing LSU because "La. R.S. 17:3351(A)(1) provides that the Board of Supervisors of LSU, as the post-secondary management board for LSU and its related

---

[1] Plaintiffs filed a Petition for Damages on January 25, 2024 but amended that Petition the next day, serving it on the same date they served Syngenta and Chevron, respectively, with the First Supplemental And Amending And Reinstated Petition. *See supra* ¶ 11.

entities, has the capacity to sue and be sued"). Accordingly, the only LSU-related entity properly named by Plaintiffs is the LSU Board.[2]

3. Specifically, Plaintiffs allege causes of action for: (i) manufacturing and design defect against Syngenta; (ii) manufacturing and design defect against Chevron; (iii) failure to warn against Syngenta; (iv) failure to warn against Chevron; (v) negligence against Syngenta; (vi) negligence against Chevron; (vii) negligence against the LSU Board; (viii) negligent misrepresentation against the LSU Board; (ix) violations of the Louisiana Unfair Trade Practices Act, La. R.S. § 51:1405 against Syngenta; (x) violations of the Louisiana Unfair Trade Practices Act, La. R.S. § 51:1405 against Chevron; (xi) fraud and misrepresentation against Syngenta; (xii) fraud and misrepresentation against Chevron; (xiii) civil conspiracy, aiding-and-abetting fraud against Chevron; (xiv): survival damages; and (xv): wrongful death.

4. The thrust of Plaintiffs' allegations is that by manufacturing, distributing, or selling products containing paraquat, Defendants exposed Plaintiff Bobby Lavelle Kelly to an increased likelihood of developing Parkinson's disease, which he was later diagnosed with on September 8, 2021, and purportedly passed away from on January 26, 2023.

5. This alleged conduct purportedly harmed Plaintiffs in the form of mental and physical suffering, emotional distress, loss of enjoyment of life, medical expenses, out of pocket lost earnings, personal injuries, and other noneconomic damages.

6. Over 6,000 similar cases—alleging Parkinson's disease based on past exposure to paraquat—have been filed against Syngenta and Chevron in federal courts around the country, and the vast majority have been transferred into a multidistrict litigation in the Southern District of

---

[2] But even if LSU and LSU AgCenter were proper parties (and they are not), Plaintiffs have improperly joined them here for the same reasons that they have improperly joined the LSU Board, and the Court should likewise disregard LSU and LSU AgCenter for purposes of diversity jurisdiction.

Illinois. *See In re: Paraquat Prods. Liab. Litig.*, 21-md-03004 (S.D. Ill. 2021). Summary judgment and Rule 702 motions for bellwether plaintiffs await decision in the MDL, while new cases are regularly being directly filed in the MDL or transferred to it. By filing this case in state court, Plaintiffs seek to avoid the MDL, which is designed to ensure the most efficient and orderly administration of a large number of cases presenting certain common issues of law and fact.

7. This case is subject to removal on the grounds of diversity jurisdiction, however, because complete diversity of citizenship would exist between Plaintiffs and Defendants but for the improper joinder of the LSU Board.

8. Plaintiffs have no hope of prevailing against the LSU Board for two reasons: (1) the LSU Board has discretionary immunity for its alleged involvement in researching, testing, marketing and promoting paraquat; and (2) Plaintiffs cannot show that the LSU Board owes a legally cognizable duty to Plaintiffs for its negligence and negligent misrepresentation claims based on that alleged involvement. As a result, the LSU Board has been improperly joined as a Defendant, and the Court should ignore its citizenship for purposes of evaluating jurisdiction.[3]

9. This case is therefore subject to removal on the grounds of diversity jurisdiction because complete diversity of citizenship exists between Plaintiffs and the properly joined Defendants: Plaintiffs are citizens of Louisiana, Syngenta is a citizen of Delaware, and Chevron is a citizen of California and Pennsylvania.

10. In accordance with 28 U.S.C. § 1446(a) and the Local Rules of this Court, a copy of the First Supplemental And Amending And Reinstated Petition for Damages and Demand for

---

[3] Because Plaintiffs' negligence and negligent misrepresentation claims against the LSU Defendants fail, so too do their claims for survival damages and wrongful death. *See Jordan v. Gautreaux*, 593 F. Supp. 3d 330, 367 (M.D. La. 2022) ("Finally, the loss of consortium, wrongful death, and survival claims must be dismissed. These claims are dependent on the other state law claims, all of which should be dismissed." (internal citations omitted)).

Jury Trial is attached as **Exhibit A** ("Amended Petition" or "Am. Pet."). A copy of all other process, pleadings, and orders served on Syngenta and Chevron or otherwise on file with the state court are attached as **Exhibit B**.[4] A copy of an email from Chevron consenting to the removal of this proceeding to this Court is attached as **Exhibit C**.

## TIMELINESS OF REMOVAL

11. Syngenta was served with the Amended Petition on February 13, 2024, and Chevron was served on or about February 12, 2024. Syngenta and Chevron have not responded to the Amended Petition in state court. Accordingly, this notice of removal is timely. *See, e.g.*, 28 U.S.C. § 1446(b) (notice of removal must be filed within 30 days of defendants being served); *Murphy Bros. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 354–56 (1999) (30-day removal period begins to run upon service of summons and complaint).

## PROPRIETY OF VENUE

12. Venue is proper in this Court under 28 U.S.C. § 1441(a) because the 18th Judicial District Court for the Parish of Iberville, Louisiana—where the state court action was pending before removal—is a state court within this federal district and division.

## BASIS OF REMOVAL

### Diversity Jurisdiction

13. Removal is proper under 28 U.S.C. §§ 1332 and 1441 because complete diversity exists between the properly joined parties, and the amount in controversy exceeds $75,000.

14. Plaintiffs Dorothy Dianne Rogers Kelly, Melissa Sawyer, and Bobby Dale Kelly are citizens of the State of Louisiana. Am. Pet. ¶¶ 25–27.

---

[4] Syngenta and Chevron have attached the most recent state court record available to them as of filing. To the extent that record is not up-to-date, Syngenta and Chevron will supplement accordingly as it becomes available.

15. Syngenta is an LLC with its headquarters in Greensboro, North Carolina. But an LLC is a citizen of the States in which its members reside, not the State where its principal place of business is located, *see Harvey v. Grey Wolf Drilling Co.,* 542 F.3d 1077, 1080 (5th Cir. 2008), and, where applicable, a court must trace an LLC's citizenship through multiple layers of ownership, *see Mullins v. TestAmerica, Inc.,* 564 F.3d 386, 397 & n.6 (5th Cir. 2009). Syngenta's sole member is Syngenta Seeds, LLC, which is headquartered in Downers Grove, Illinois. The sole member of Syngenta Seeds, LLC is Syngenta Corporation, which is incorporated and headquartered in Delaware. Syngenta is therefore a citizen only of the State of Delaware.

16. Chevron is headquartered in San Ramon, California, and incorporated in the Commonwealth of Pennsylvania, and it is thus a resident of those two States. *See Hertz Corp. v. Friend*, 559 U.S. 77, 80–81 (2010) (citing 28 U.S.C. § 1332(c)(1)).

17. Complete diversity therefore exists between the parties, but for the improper joinder of the LSU Board for alleged negligence and negligent misrepresentation based on its involvement in researching, testing, marketing, and promoting of paraquat. *See* Am. Pet. ¶¶ 320–44.

18. The improper joinder doctrine "provides that a district court must disregard, for diversity jurisdiction purposes, the citizenship of an improperly joined defendant." *Waste Mgmt., Inc. v. AIG Specialty Ins. Co.*, 974 F.3d 528, 533 (5th Cir. 2020).[5] A removing party can demonstrate improper joinder by establishing either "actual fraud in the pleading of jurisdictional facts," or, as relevant here, establishing the "inability of the plaintiff to establish a cause of action against the non-diverse party in state court." *Travis v. Irby*, 326 F.3d 644, 647 (5th Cir. 2003). "To determine whether the plaintiff can establish a cause of action against the non-diverse

---

[5] Caselaw in the Fifth Circuit uses both "improper joinder" and "fraudulent joinder," but "[a]lthough there is no substantive difference between the two terms, 'improper joinder' is preferred." *Smallwood v. Ill. Cent. R.R. Co.*, 385 F.3d 568, 571 n.1 (5th Cir. 2004) (en banc).

6

defendant, the district court conducts a Federal Rule of Civil Procedure 12(b)(6) analysis." *Waste Mgmt.*, 974 F.3d at 533.  In the end, "[a] 'mere theoretical possibility of recovery under local law' will not preclude a finding of improper joinder." *Smallwood v. Illinois Cent. R.R. Co.,* 385 F.3d 568, 573 n.9 (quoting *Badon v. RJR Nabisco, Inc.*, 236 F.3d 282, 286 n.4 (5th Cir. 2000)).

19. Plaintiffs have improperly joined the LSU Board, and its citizenship should be excluded for purposes of determining diversity jurisdiction for two reasons.

20. ***First***, the discretionary immunity doctrine bars any claims against the LSU Board. The discretionary immunity doctrine, as its name implies, immunizes a public entity's decision when (1) it involves an element of choice (rather than a course of conduct prescribed by law) so long as (2) the decision implicates social, economic, or political policies.  La. R.S. § 9:2798.1. Both elements of this discretionary immunity test are satisfied here.

21. To start, the LSU Board's decisions about whether and how to allegedly research, test, and promote paraquat were a matter of choice, not mandated by law.  A decision is discretionary unless there is a "specific course of action . . . prescribed" by law.  *Misita v. Maumoulides*, 336 So.3d 886, 887 (La. 2022).  There is a sufficiently specific course of action only when the law "dictate[s] the [defendant's] course of conduct."  *Mitchell v. City of New Orleans*, 184 F. Supp. 3d 360, 377 (E.D. La. 2016).  Plaintiffs point only to the Smith-Lever Act, which says "cooperative agricultural extension work shall consist of the giving of instruction and practical demonstrations in agriculture."  Am. Pet. ¶ 56 (quoting 38 Stat. 372).  But that statute is so "general" that it "fail[s] to prescribe a nondiscretionary course of action"—"[a]lmost by definition these 'responsibilities' required the" LSU Board "to exercise judgment and choice to define specific directives or functions."  *Freeman v. United States*, 556 F.3d 326, 339 (5th Cir. 2009).  Plainly, the Act did not impose a mandatory duty to research, test, and promote *paraquat*

7

at all, let alone a "specific course of action" for *how* the LSU Board should research, test, and promote paraquat.[6]

22. Next, the LSU Board's decisions whether and how to research, test, and promote paraquat implicate a variety of social, economic, and political policies. The LSU Board's decisions regarding whether and how to disseminate information on paraquat involved balancing "financial limitations, safety considerations, equipment availability, and feasibility"—classic social, economic, and political policy decisions. *See, e.g.*, *Fossier v. Jefferson Par.*, 985 So.2d 255, 259 (La. Ct. App. 2008); *see also*, *e.g.*, *Dominique v. St. Tammany Par.*, 313 So.3d 307, 318 (La. Ct. App. 2020) (decisions "concern[ing] the allocation of time and resources" are those "for which" a public entity "is statutorily immune"). The LSU Board's decisions regarding paraquat also reflects policy judgments concerning how best to promote Louisiana's agricultural economy. *See, e.g.*, *Fossier*, 985 So.2d at 259. Any one of these policy considerations would suffice to warrant discretionary immunity and, taken together, they easily satisfy the standard.

23. And *second*, in any event, the LSU Board has been improperly joined because it did not owe a legal duty to Plaintiffs, and therefore, Plaintiffs' claims for negligence and negligent misrepresentation claims fail as a matter of law.

24. At the threshold, Plaintiffs' negligence claim fails based on a lack of a specifically enforceable duty against the LSU Board. *See* Am. Pet. ¶¶ 320–44. Louisiana imposes a general or "universal duty" on defendants to exercise "reasonable care," but plaintiffs "are still required to assert a specific standard of care" from "statutory" or "jurisprudential" law, or one "arising from

---

[6] Plaintiffs misunderstand the concept of "operational negligence." Operational negligence does not come into play if there is a discretionary decision grounded in public policy. *See, e.g.*, *Gomez v. City of New Orleans*, 2023 WL 4351230, at *3 (E.D. La. July 5, 2023) ("Governmental actions unrelated to public policy considerations are commonly referred to as 'operational,' as opposed to discretionary, and thus do not implicate discretionary acts immunity."). It is therefore not a basis for imposing liability in these circumstances, as Plaintiffs suggest. *See id.*

8

general principles of fault" to establish that the defendant owed an enforceable duty. *Butler v. Denka Perform. Elastomer, LLC*, 16 F.4th 427, 444–45 (5th Cir. 2021) (internal quotation marks omitted). A plaintiff's failure to identify the specific basis for a defendant's specific duty of care renders the claim subject to dismissal. *Id.* at 446.

25.     Here, Plaintiffs do not allege that the LSU Board manufactured, distributed, or otherwise sold paraquat—a traditional source of duty in product liability cases—and do not identify any specific duty that the LSU Board owed to Plaintiff Bobby Lavelle Kelly stemming from conducting research or sharing information about paraquat, either. *Cf.* Am. Pet. ¶¶ 320–344. Instead, Plaintiffs identify six general duties owed by the LSU Board: (1) "a duty to supply correct information"; (2) "a duty to conform itself to the behavior of an objective third-party resource for farming communities delivering research-based recommendations to Louisiana farmers"; (3) "a duty to conform itself to the behavior of a reasonable research university in delivering information about agriculture to Louisiana farmers and the public"; (4) "a duty to exercise ordinary care for the health and safety of the persons whom it was reasonably foreseeable could be exposed to Paraquat"; (5) "a duty to exercise ordinary care for the health and safety of the persons whom it was reasonably foreseeable could be receive and rely on information disseminated by LSU and the LSU AgCenter"; (6) a "duty in all of their undertakings, including in the dissemination of information concerning Paraquat, to exercise reasonable care to ensure they did not create unreasonable risks of personal injury to others." *Id.* ¶¶ 327, 329–33.

26.     These duties, however, are varying applications of Louisiana's general duty of care, rather than *specific* duties delivered from a source aside from that general duty of care. *See* La. Civ. Code art. 2315. As the Fifth Circuit has explained in an environmental tort case with similar facts, a plaintiff's "retreat to generalized grievances is unavailing" in establishing a legal duty, and

that is precisely what has happened here: Plaintiffs have not pointed to any legal source of a specific duty owed to them by the LSU Board based on any alleged involvement with paraquat. *See Butler*, 16 F. 4th at 444–45 (holding that a plaintiff failed to state a claim against the owner of a chemical plant for chloroprene exposure because plaintiff could not point to a specific source of that duty).

27. Because the LSU Board owes no specifically enforceable duty to Plaintiffs here, Plaintiffs have failed to state a negligence claim against the LSU Board. *See Butler v. Denka Perform. Elastomer, LLC*, 2022 WL 102621, at *3 (E.D. La. Jan. 11, 2022) ("Without allegations suggesting the *source* of an enforceable duty, the plaintiff is unable to plead a plausible claim for negligence." (emphasis added)), *aff'd sub nom. Butler v. E. I. DuPont de Nemours & Co.*, 2022 WL 5059893 (5th Cir. Oct. 4, 2022); *Landry v. Laney Directional Drilling Co.*, 2009 WL 3833831, at *4 (M.D. La. Nov. 16, 2009) ("[T]he court concludes that DEQ had no legal duty to either test or remediate the material that was allegedly deposited on plaintiffs property by Laney. Plaintiffs therefore have failed to establish a claim against the non-diverse defendant, DEQ, and its joinder does not divest the court of diversity jurisdiction.").

28. Plaintiffs' negligent misrepresentation claim also fails for the same reason: the LSU Board lacks a legal duty to Plaintiff Bobby Lavelle Kelly over his alleged exposure to paraquat. *See* Am. Pet. ¶¶ 320–44. To state a claim for negligent misrepresentation, "there must be a legal duty on the part of the defendant to supply correct information, there must be a breach of that duty, and the breach must have caused plaintiff damage." *Barrie v. V.P. Exterminators, Inc.*, 625 So. 2d 1007, 1015 (La. 1993). When based on nondisclosure of information, a negligent misrepresentation claim requires "some sort of business relationship making it reasonable to imply an affirmative duty" to disclose. *McLachlan v. N.Y. Life Ins. Co.*, 488 F.3d 624, 630 (5th Cir.

2007); *see also Barrie*, 625 So. 2d at 1016 (tort includes "non-disclosure in *fiduciary relationships*, to situations of direct disclosure to non-clients." (emphasis added)).

29. Plaintiffs' negligent misrepresentation claim centers on the alleged non-disclosure of paraquat's purported association with Parkinson's disease. *E.g.*, Am. Pet. ¶ 340 ("Were it not for the direct assistance and operational negligence of LSU Defendants, Syngenta and Chevron would not have been as successful in keeping the link between Paraquat and Parkinson's Disease from Louisiana consumers and end-users of Paraquat, such as Plaintiff."). Yet Plaintiffs fail to allege the requisite "business relationship" between the LSU Board and Plaintiff Bobby Lavelle Kelly that imposes a duty to disclose that alleged association, instead focusing their allegations on a relationship among the LSU Board, Syngenta, and Chevron. *See, e.g.*, *id.* ¶ 19a ("Syngenta designed, manufactured, tested, promoted, and distributed Paraquat in conjunction with Chevron and with LSU Defendants."). Because no duty to disclose exists for the LSU Board, Plaintiffs' negligent misrepresentation claim fails. *See McLachlan*, 488 F.3d at 630 (holding that defendant has no affirmative duty to disclose if not in privity or fiduciary relationship with plaintiff and that to hold otherwise would "require everyone to warn everyone else of various physical dangers, regardless of the relationship").

30. In sum, the LSU Board has been improperly joined because Plaintiffs have no chance at succeeding in either their negligence or negligent misrepresentation claims against it.

31. There is also more than a plausible basis for concluding that the amount in controversy in this proceeding exceeds $75,000. A notice of removal must include "a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Dart Cherokee Basin Operating Co. v. Owens*, 574 U.S. 81, 89 (2014). The defendant is required to present

evidence supporting that plausible allegation only if the allegation is challenged by the plaintiff or the court. *Id.*

32. Louisiana law prohibits plaintiffs "from alleging or demanding a specific dollar amount of damages, limiting the prayer for relief to such damages as are reasonable in the premises." *Grant v. Chevron Phillips Chem. Co.*, 309 F.3d 864, 868 (5th Cir. 2002) (footnote and internal quotation marks omitted).

33. Thus, when removing a case to federal court from Louisiana state court on diversity grounds, the removing defendant may prove that the amount in controversy exceeds $75,000 either by (a) demonstrating that it is "facially apparent" that the claims are likely above $75,000, or (b) setting forth the "facts in controversy" that support a finding of the requisite amount. *Gebbia v. Wal-Mart Stores, Inc.*, 233 F.3d 880, 883 (5th Cir. 2000) (citing *Luckett v. Delta Airlines, Inc.*, 171 F.3d 295, 298 (5th Cir. 1999)).

34. It is facially apparent that, if Plaintiffs were to prove their allegations, the monetary damages sought by each Plaintiff would exceed $75,000.

35. Allegations of long-term health issues are more likely to exceed the amount in controversy requirement. *See Stockstill v. Wal-Mart Stores, Inc.*, 2010 WL 6494058, at *2 (M.D. La. Dec. 20, 2010) (acknowledging that a child's lifelong "injuries result in exposure to damages well in excess of the jurisdictional amount"), *report and recommendation adopted*, 2011 WL 1397041 (M.D. La. Apr. 13, 2011).

36. The amount in controversy is met here because Plaintiffs seek substantial monetary damages for physical pain, mental anguish, diminished quality and enjoyment of life, and medical expenses as a result of diagnosis with a serious long-term illness—Parkinson's disease—and Plaintiffs seek substantial monetary damages for loss of consortium. *E.g.*, Am. Pet. ¶ 294, Prayer

for Relief. Indeed, the cost of Plaintiff Bobby Lavelle Kelly's medical treatment alone likely satisfies the $75,000 requirement. *See* Matthew Gavidia, "Study Details Economic Burden of Parkinson's Disease in the United States," AJMC (June 3, 2020), *available at* https://www.ajmc.com/view/study-details-economic-burden-of-parkinson-disease-in-the-united-states.

## OTHER REMOVAL ITEMS

37. Under 28 U.S.C. § 1446(b)(2)(A), all Defendants that have been properly joined must join or consent to removal.

38. Syngenta consents to removal, as indicated by counsel's signatures below, and Chevron consents to removal as indicated by counsel's signatures below and **Exhibit C** attached hereto.

39. Because the LSU Defendants have been improperly joined, Syngenta does not require the LSU Board's consent for removal. *Rico v. Flores*, 481 F.3d 234, 239 (5th Cir. 2007) ("[A] removing party need not obtain the consent of a co-defendant that the removing party contends is improperly joined.").

40. By filing this Notice of Removal, Syngenta and Chevron expressly reserve, and do not waive, any and all exceptions and defenses that may be available, including but not limited to those related to personal jurisdiction, venue, and service of process. If any question arises as to the propriety of removal to this Court, Syngenta and Chevron request the opportunity to submit a brief in support of its position that this case has been properly removed and to present oral argument.

41. Syngenta and Chevron hereby reserve the right to amend or supplement this Notice of Removal.

42. Pursuant to 28 U.S.C. § 1446(d), Syngenta and Chevron are contemporaneously filing a Notice of Removal with the clerk of the state court where the lawsuit has been pending and will serve notice of the filing of this Notice of Removal on Plaintiffs.

**WHEREFORE**, Syngenta and Chevron remove this action, now pending in the 18th Judicial District Court for the Parish of Iberville, Louisiana, case number No. C-82988, to this Court.

Respectfully Submitted,

**ADAMS AND REESE LLP**

*/s/ Diana Cole Surprenant*
Charles A. Cerise, Jr. (#1755)
Diana Cole Surprenant (#33399)
Alexandra Roselli Lamb (#37847)
701 Poydras Street, Suite 4500
New Orleans, Louisiana 70139
Telephone: (504) 581-3234
Facsimile: (504) 566-0210
***Attorneys for Defendant, Syngenta Crop Protection, LLC***

**FORMAN WATKINS & KRUTZ LLP**

*/s/ Tim Gray*
**TIM GRAY**, #31748
Tim.Gray@formanwatkins.com
**MARGARET W. McLAUGHLIN,** #38345
Margaret.McLaughlin@formanwatkins.com
**TAYLOR D. WAXLEY, #**39382
Taylor.Waxley@formanwatkins.com
201 St. Charles Ave., Suite 2100
New Orleans, LA 70170
Telephone: (504) 799-4383
Facsimile: (504) 799-4384
LAEService@formanwatkins.com
***Attorneys for Defendant, Chevron U.S.A. Inc.***

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on March 13, 2024, a copy of the above and foregoing was provided to all counsel of record via facsimile, hand delivery, electronic mail, and/or U.S. mail, postage prepaid and properly addressed.

*/s/ Diana Cole Surprenant*